**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT N. PREITE

        Plaintiff,

vs.                                  Case No. 3:05-cv-106-J-32MMH

CHARLES OF THE RITZ GROUP,
LTD. PENSION PLAN and
YSL BEAUTE, INC.,

        Defendants.

_____

## <u>ORDER</u>[1]

    This case involves a claim for retirement benefits brought pursuant to the Employment Retirement Income Security Act ("ERISA").  Before the Court are cross motions for summary judgment: Plaintiff Robert N. Preite's ("Preite") Second Amended Motion for Summary Judgment Against Defendant, YSL Beaute, Inc. (Doc. 39), and Defendant YSL Beaute, Inc.'s ("YSL Beaute") Motion for Summary Final Judgment.  (Doc. 43.)[2]  The parties filed responses in opposition to the cross motions,

_____

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2]    Preite has been unable to effectuate service of process on named defendant Charles of the Ritz Group, Ltd. Pension Plan ("Plan").  (Doc. 39 at 1-2.)  YSL Beaute is the sole remaining defendant in this litigation.  (Doc. 43 at 1.)

(Docs. 44, 45), and record evidence in the form of answers to interrogatories, affidavits, depositions, and exhibits thereto.  (Docs. 11-2, 11-3, 11-4, 11-5, 11-6, 11-7, 14, 18.) The Court heard argument on June 28, 2006.

I.    **FACTS**

    A.    **The Underlying Facts**

This case is unusual inasmuch as the Court is not presented with an administrative record or with a decision of an ERISA plan administrator.  The record evidence is sparse indeed.

Preite, who is currently age 67 (Doc. 11-3 at 15), was employed by Charles of the Ritz Group, Ltd., a cosmetics company, from November 1958 through November 1979, for a total of twenty-one (21) years.  (Docs. 11-2 at 1, ¶ 3; 11-3 at 9, 18; 11-4 at 21.)  Preite started with the company working in computers and ultimately was promoted to the position of customer services director. (Doc. 11-3 at 6.)  He was terminated from his job when the company "down-sized."  (Doc. 11-3 at 6.)  Preite was a participant in the Charles of the Ritz Group, Ltd. Pension Plan ("Plan").  (Doc. 11-2 at 1, ¶ 4.)

After he left Charles of the Ritz Group, Ltd., Preite received two documents (Doc. 11-3 at 17-19): a letter dated September 3, 1980 from Charles of the Ritz Group, Ltd. Benefits Administrator Danielle A. Gaherty (Docs. 11-3 at 19; 11-4 at 21), and a letter dated October 19, 1983, from Charles of the Ritz Group, Ltd. Benefits

Specialist Allison Nadler.  (Doc. 11-4 at 20.)

The September 1980 letter from the Plan benefits administrator stated that based on to Preite's termination from Charles of the Ritz Group, Ltd. effective November 15, 1979, "the following represents an estimate of your future vested benefit entitlement from the Squibb Corporation Pension Plan"[3] payable each month following Preite's 65th birthday, effective June 1, 2004, in the amount of $505.70 a month.  (Doc. 11-4 at 21.)  Similarly, the October 19, 1980 letter from the Charles of the Ritz Group, Ltd. benefits specialist stated:

> Pursuant to your termination from Charles of the Ritz Group, effective November 15, 1979, you are entitled to a future vested benefit.  This future vested benefit entitlement from the Squibb Corporation Pension Plan is $505.70, which is payable on the first month following your 65th birthday (June 1, 2004).

(Doc. 11-2 at 6.)  Ms. Nadler included her phone number where Preite could call if he had any questions.  (Id.)

On August 9, 1988, Yves Saint Laurent Parfum Corporation, the Plan Sponsor at that time, terminated the Plan.  (Doc. 11-2 at 8, 11.)  In connection with that termination, Preite received an "Election Form" giving him the option of receiving

_____

[3]      "Squibb" is referred to in the record in several forms: "Squibb" (Docs. 11-3 at 9, 20, 23, 30, 32; 11-5 at 9); "Squibb Corporation" (Doc. 43 at 2, ¶ 5); "Bristol-Myers Squibb Company" (Docs. 1, 4); "Squibb Corporation Pension Plan" (Doc. 11-4 at 20, 21); and Bristol-Myers Squibb Company Retirement Income Plan." (Doc 11-4 at 30.)  The Court will at times refer to "Squibb."

either a lump sum distribution in full settlement of his rights with respect to the Plan, or a deferred annuity contract with monthly payments beginning at age 65 (or reduced benefits at age 55). The deadline for making this election was October 15, 1988. The form did not show any amount of benefits due to Preite, or how they were calculated. Preite elected the lump sum distribution, and he and his wife both signed the form on October 13, 1988, and sent it back, according to Preite, either "to Charles of the Ritz or Squibb." (Docs. 11-3 at 19-22; 11-4 at 22.)

While he has no specific recollection, Preite acknowledged that the Election Form may have come to him with a cover letter. (Doc. 11-3 at 20-21, 29; <u>see also</u> 11-5 at 10.) The purported undated cover letter,[4] written on Yves Saint Laurent Parfums Corp. stationary and from the "Corporate Benefits Committee," was addressed to "All Former Employees of Yves Saint Laurent Parfums Corp. with a Deferred Vested Pension Benefit under the Charles of the Ritz Group, Ltd. Pension Plan," regarding "Your Retirement Benefits." (Doc. 11-4 at 23.) The cover letter stated that "The Charles of the Ritz Group, Ltd. Pension Plan has been terminated by Yves Saint Laurent Parfums Corp . . . . on August 9, 1988." Noting that the letter recipients were fully vested, the cover letter said:

> The Plan trustee will be directed to purchase an insurance
> annuity for you to provide the full amount of your accrued

---

[4]    The purported cover letter was attached as an exhibit to Preite's deposition. (Doc. 11-4 at 23.)

> benefit under the Plan through August 9, 1988, or you may
> elect to receive a lump-sum payment.

(Doc. 11-4 at 23.)   The annuity purchase was not to occur "until at least next November."  (Id.)  According to the cover letter, attached was a "notice of benefit commitments which the Company is required by law to give you" with an estimated dollar amount of benefits.[5]  Also attached to the exhibit was a blank Election Form, similar to the Election Form signed by Preite and his wife, to be completed and returned to Yves Saint Laurant Parfums Corp. by October 15, 1988.  (Doc. 11-4 at 25.)  Questions were directed to the vice president of human resources for Yves Saint Laurent Parfums Corp. with a phone number provided.  (Doc. 11-4 at 23.)

Preite testified in his deposition that he never heard anything back from any company or pension plan after submitting his signed Election Form in October 1988.  His wife, who in 1988 was employed by Yves Saint Laurant Parfum Corp. (which had purchased Charles of the Ritz, (Doc. 11-5 at 12-13)), and was a partially vested participant in the Plan who had elected the lump-sum payment, did receive her check.  (Docs. 11-3 at 24-27; 11- 4 at 28; 11-5 at 10.)  Preite said that this prompted him to call "Squibb, Charles of the Ritz" and that a woman on the line told him that because of his status of having left the company, he was not entitled to make an election and

---

[5]     Exhibit 4 to Preite's deposition, the purported cover letter, includes "Attachment 1," an uncompleted form entitled "Notice of Benefit Commitments." Spaces for specific participant data are left blank.  A blank Election Form is also attached.  (Doc. 11-4 at 24-25.)

"[y]ou will get your pension when you reach 65."  (Doc. 11-3 at 23.)  Preite said he was told that because he was already vested in the Plan, "it could not be changed. It was already sealed.  I guess, locked in and sealed."  Preite said the woman told him "when you reach 65 call Squibb and you can claim your pension."  (Doc. 11-3 at 25, 30.)

Preite testified that a year later, in 1989 or early 1990, having heard and received nothing regarding his pension, he called the Human Resources department at Squibb.  Again, Preite said he was told by a woman he would be receiving the $505 exact amount upon turning age 65, and that the amount was "locked in."  (Doc. 11-3 at 30-32.)

Preite said that the 1989-90 phone calls were the last communications he received concerning his pension, and that the only proof he has that he was entitled to a pension is the two letters he received in 1980 and 1983.  (Docs. 11-3 at 26, 31; 11-4 at 20, 21.)  Preite testified that he has never been paid any pension benefits, either as a lump-sum settlement, a monthly benefit, or an annuity contract from the Plan.  (Doc. 11-2 at 3, ¶ 10.)  Preite's testimony is corroborated by his wife, who testified that Preite never received a lump sum payment from the Plan or any other benefits, and by the couple's tax return which reflects Preite's wife's lump sum pension payment, but not his.  (Docs. 11-3 at 27-29; 11-4 at 28; 11-5 at 12, 19, 21; 11-6 at 1.)

6

Preite seeks a $505.70 monthly pension benefit, commencing on June 1, 2004, the day after his 65th birthday.

## B.    Corporate Transactions

According to YSL Beaute and related entities, a number of corporate transactions took place since 1988 which affected the Plan, and have resulted in the loss of Plan documents.  (Doc. 11-4 at 31.) Though these subsequent corporate transactions are not documented in the record, counsel for defendant YSL Beaute through counsel conceded at oral argument that YSL Beaute is indeed the corporate successor to Yves Saint Laurent Parfums Corporation, the Plan administrator and sponsor at the time of termination of the Plan on August 9, 1988.  (See also Docs. 11-2 at 8, 11; 18-2 at 2, ¶¶ 2,4; 43 at 3, ¶ 8; 45 at 2.)[6]

---

[6]     The following is a rough account of the subsequent corporate transactions gleaned from the record, including the deposition testimony by plaintiff and his wife; unsworn letters; and pleadings.
        Prior to Preite's termination from employment in November 1979, Charles of the Ritz Group, Ltd. was acquired by "Squibb."   Charles of the Ritz kept its name and functioned "like a subsidiary."  (Doc. 11-3 at 9; 11-5 at 9 (plaintiff and plaintiff's wife deposition testimony); but see Doc. 43 at 2, ¶ 5 ("[s]ometime after November 1979, Charles of the Ritz was acquired by Squibb Corporation")(YSL Beaute 's "undisputed facts").)  At the time of his termination in 1979, Preite was a participant in the Charles of the Ritz Group, Ltd. Pension Plan, also called the Squibb Corporation Pension Plan.  (See Doc. 11-4 at 20, 21 (letters identified and attached as deposition exhibits).)
        Prior to 1988, Charles of the Ritz Group, Ltd. became Yves Saint Laurant Parfums Corp.   (See Docs. 11-4 at 29 (W-2 Form attached to tax returns); 11-5 at 12, 13 (Mrs. Preite was an employee of Yves Saint Laurant Parfums Corp. in 1988)(deposition of plaintiff's wife); 18-2 at 2, ¶ 2 (affidavit of Gucci America, Inc. human resources coordinator).)  Prior to August 1, 1988, but subsequent to 1983,

the Charles of the Ritz Group, Ltd. Pension Plan was maintained by Yves Saint Laurant Parfums Corp.  (Doc. 18-2 at  2, ¶ 2 (affidavit of Gucci America, Inc. human resources coordinator); Doc. 43 at 3, ¶ 8 (YSL Beaute 's "undisputed facts")).)  The Plan Sponsor at the time of termination of the Plan on August 9, 1988, was Yves Saint Laurent Parfums Corporation.  (Doc. 11-2 at 8, 11 (unsubstantiated statements in letters identified and attached as deposition exhibits))

Effective August 1, 1988, participants of the former Charles of the Ritz Group, Ltd. Pension Plan, who were employed at the time by Yves Saint Laurant, were segregated into a separate plan which was amended and restated by Yves Saint Laurant Parfums Corp.  As a result, the former Charles of the Ritz Group, Ltd. Pension Plan, consisted only of participants, such as Preite, who were no longer employed by Yves Saint Laurent Parfums Corp.  The Plan was terminated by Plan Sponsor Yves Saint Laurant Parfums Corp. on August 9, 1988.  (Doc. 18-2 at 2, ¶¶ 3, 4 (affidavit of Gucci America, Inc. human resources coordinator).)  Those former employees were given the opportunity to elect either a monthly benefit payment at retirement or an immediate lump-sum settlement.  (Doc. 18-2 at 2, ¶ 5 (affidavit of Gucci America, Inc. human resources coordinator).)

At some undefined point in time, Sanofi Beaute, Inc. ("Sanofi") acquired "an entity that had itself previously acquired a prior acquirer of the Plan Sponsor." (Doc. 11-2 at 11.)  In February 2004, Bristol-Myers Squibb Company Savings and Pension Center stated by letter that Preite's "pension was payable from Sanofi," and that Preite should contact the Sanofi Pension Department, attention Charles of the Ritz Pension Plan.  (Doc. 11-4 at 30 (letter identified and attached as deposition exhibits).)

Gucci America, Inc. acquired Sanofi Beaute, Inc. in 1999.  (Doc. 11-4 at 31 (unsworn letter by Gucci America, Inc. human resources coordinator).)  "In December, 1999, Gucci Group, N.V., the parent company of Gucci America, Inc., acquired Yves Saint Laurant and YSL Beaute (ex-Sanofi Beaute)."  (Doc. 18-2 at 3, ¶ 8 (affidavit of Gucci America, Inc. human resources coordinator).)

"Further research by Preite's counsel revealed that the corporate successor to Yves Saint Laurent Parfums Corp., the plan sponsor at the time of the termination of the . . . Charles of the Ritz Group, Ltd. Plan, may have been YSL Beaute, Inc., and not Gucci Group, N.V., the latter of which is a holding or parent company of both YSL Beaute, Inc. and Gucci America, Inc."  (Doc. 39 at 3 (Preite's memorandum in support of motion for summary judgment).)

8

**C.**    **Recent Events**

On May 30, 2004, Preite turned 65 years of age.  (Doc. 11-2 at 1, ¶ 5.)  Preite

testified that as he approached retirement age, he called the Squibb human resources

department in Princeton, New Jersey, as the October 19, 1983 letter directed.  (Docs.

11-3 at 32; 11-4 at 1, 20.)  "[T]hey told me that the pension was sold to Sanofi and

gave me the telephone number to call.  I then called Sanofi and they told me to call -

it was then sold again to Gucci.  And then [when] I called Gucci, I got Michele

Cordes."  (Docs. 11-3 at 32; 11-4 at 30.)

On October 28, 2004, Cordes, with the Human Resources Department at Gucci

America, Inc., wrote to Preite that he had elected on October 13, 1988, to take a lump

sum settlement upon termination of the Plan, and that Gucci had "uncovered no

evidence to indicate that the lump sum distribution which you elected has not already

been satisfied in full accordance with your duly filed election."  (Doc. 11-2 at 8.)  Gucci

America, Inc. ("Gucci"), through Cordes, informed Preite that because of the passage

of time, and the number of corporate transactions that had transpired, "we are unable

to provide you with any additional information with respect to your Plan."  (Doc. 11-2

at 8.)

On November 22, 2004, Preite's counsel wrote to Cordes at Gucci requesting

the plan documents on the Plan, including the latest updated summary plan

description, the latest annual report and other relevant documents.  (Doc. 14 at 4.)

Preite through his counsel also requested any information on administrative remedies or procedures, as are described in the Plan documents requested, and stated that this constituted an attempt to exhaust those administrative remedies.  (Id.)

On December 6, 2004, attorney Stephen H. Sherman, on behalf of Gucci, wrote to Preite's counsel that "[a]s is customary in the course of terminating a defined benefit pension plan," the Plan Sponsor calculated the accrued benefit for each Plan participant, and offered each person the opportunity to choose between a monthly pension benefit to be funded by an annuity insurance contract purchased for the person's benefit, or a lump sum distribution.  (Doc. 11-2 at 11.)  Sherman reiterated that Gucci "has uncovered no evidence to indicate that the lump sum distribution which [Preite] elected was not satisfied in full in 1988 . . . in accordance with his duly filed election."  (Doc. 11-2 at 11-12.)

Gucci  disclosed that "there exists no governing plan document or summary plan description that would provide a mechanism for [Preite] to file a formal claim for benefits in 2004."  (Doc. 11-2 at 12.)

Referring to the 1988 monthly benefit calculation of $505.70 a month, Gucci, through its counsel responded:

> [S]uch monthly benefit would only have been payable had
> he elected upon Plan termination to receive it in the form of
> a monthly annuity.  Further, as a consequence of the Plan's
> termination, such monthly benefit would have been payable
> commencing on June 1, 2004 by the insurance company
> from which the Plan Sponsor would have purchased an

10

> annuity contract on [Preite's] behalf.  In light of [Preite's] election, as evidenced by the notarized form, to receive an immediate lump sum distribution in 1988, he has no right nor any substantiable claim to receive a monthly benefit at age 65, and consistent with that election, Gucci possesses no records to indicate that an annuity contract was purchased at that time on his behalf by the Plan Sponsor. Doc. 11-2 at 12.)

The "reasonable conclusion," according to Gucci's counsel,  is that Preite was paid his single sum distribution in 1988. (Doc. 11-2 at 12.)  Counsel for Gucci denied any relief for Preite, contending that the statute of limitations had run from 1988, and that Preite is not a "participant" in a the Plan since it was terminated in 1988.  (Id.)

Neither party has located or submitted to the Court any Plan documents.

D.    **The Lawsuit**

Preite first filed his claim for retirement benefits, under 29 U.S.C. § 1132(a)(1)(B), on January 31, 2005. (Doc. 1.)  In his Second Amended Complaint,[7]

———————————————

[7]    Preite originally brought this ERISA action for pension benefits pursuant to 29 U.S.C. ¶ 1132(a)(1)(B) against the Plan, Gucci America, Inc. and Bristol-Myers Squibb Company on January 31, 2005.  (Doc. 1.)  On March 31, 2005, Preite moved to dismiss without prejudice defendant Bristol-Myers Squibb Co. (Doc. 4) "after its counsel produced documentation that demonstrated that it could not have been the plan administrator during the relevant time period in 1988 when the Plan was purportedly terminated."  (Doc. 10 at 2; see also Doc. 39 at 2.)  The Court dismissed Squibb without prejudice on April 11, 2005.  (Doc. 6.)  The Plan and Gucci America, Inc. remained as defendants.

On November 10, 2005, Preite filed an unopposed motion to amend his complaint to add Gucci Group, N.V. as a defendant, based upon an assertion in an affidavit submitted by Gucci America, Inc. that "[i]n December 1999, Gucci Group, N.V., the parent company of Gucci America, Inc., acquired Yves Saint Laurent and YSL Beaute (ex-Sanofi Beaute)."  (Docs. 19-1 (citing Doc. 18-2 at 3, ¶ 8); 19-2.)

Preite alleges YSL Beaute's successor liability as follows:

> Defendant, YSL Beaute, Inc., a New York corporation, is the corporate successor to Yves Saint Laurent Parfums Corp., which was the successor in interest to the original fiduciary, Charles of the Ritz Group, Ltd., under the Charles of the Ritz Group, Ltd. Pension Plan that was charged with and controls administration of the Charles of the Ritz Group, Ltd. Pension Plan.  In particular, on January 30, 1995, Yves Saint Laurent Parfums Corp., a Delaware corporation, was merged into Sanofi Beaute, Inc., a New York corporation.  Subsequently by either name change or merger, Sanofi Beaute, Inc. became YSL Beaute, Inc., an active New York corporation.

(Doc. 34 at 2-3, ¶ 6.)   YSL Beaute denied the allegation, and asserted as an affirmative defense that Preite "has failed to state a claim against YSL [Beaute] under ERISA because the Complaint states that the Plan was terminated in 1988, and therefor fails to state that YSL [Beaute] is a fiduciary or took any actions as a fiduciary

---

The Court granted the amendment to the complaint and the amended complaint was filed.  (Docs. 22, 23.)  Whether Gucci N.V. was properly served remained at issue.  (See Doc. 30.)

Then, on December 20, 2005, Preite moved again to amend his complaint to add YSL Beaute, Inc.  as a defendant, and dismiss, without prejudice, Gucci America, Inc. and Gucci Group, N.V.  Preite's counsel stated that he based the motion on "further research" which revealed that "the corporate successor to Yves Saint Laurent Parfums Corp., the plan sponsor at the time of the termination of the . . . Charles of the Ritz, Ltd. Plan, may have been YSL Beaute, Inc.," which counsel asserted was confirmed by telephone by "in house New York counsel that represented YSL Beaute, Inc. and not Gucci Group, N.V., the latter of which is a holding or parent company of both YSL Beaute, Inc. and Gucci America, Inc." (Doc. 31-1 at 2.)  The Court granted the motion to amend the complaint (Doc. 33) and Preite filed his second Amended Complaint on December 29, 2005.  (Doc. 34.)

under the Plan."  (Doc. 36 at 2, ¶ 6, and at 3-4.)

In addition to retirement benefits, Preite also seeks recovery of his attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1).  (Doc. 34 at 5, ¶ 15.)

### E.    Cross Motions For Summary Judgment[8]

Preite argues that he is entitled to summary judgment as a matter of law because "YSL Beaute, Inc., as successor to the administrator of the Plan and Plan sponsor at the relevant time of its purported termination, is the proper party defendant in an action for recovery of benefits and enforcement of rights for an ERISA defined benefit plan brought under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B)." (Doc. 39 at 7.)

Defendant YSL Beaute counters that it is entitled to judgment as a matter of law because Preite has failed to advance any competent evidence to establish that he has sued the proper defendant and that YSL Beaute is a successor Plan sponsor or administrator of the Plan.  (Doc. 45 at 2.)  YSL Beaute's position is that after the assets of the terminated Plan were distributed in 1988, "the Plan ceased to exist" and there was no Plan sponsor or administrator for an entity to succeed. (Doc. 45 at 2.)

_____

[8]    Actions to recover benefits under Section 1132(a)(1)(B) are equitable in nature, and not to be decided by a jury.  Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 907 (11th Cir. 1997).  Inasmuch as both parties agreed at oral argument that the facts in the record are not in dispute, and that they are unable to present any additional evidence, this case is ripe for consideration on cross-motions for summary judgment.

"Therefore, YSL [Beaute] has no legal status with regard to the Plan and is not a proper defendant in this case."  (Doc. 45 at 3.)

In addition, YSL Beaute argues that Preite is not a "participant" or "beneficiary" with standing entitled to bring a civil action pursuant to 29 U.S.C. § 1123(a)(1)(B) because he was either paid a lump sum distribution or guaranteed by the purchase of an annuity in 1988 when the Plan was terminated and is thus not eligible to receive any benefit from the Plan. (Docs. 43 at 4-7; 45 at 5-6.)  "If, as Mr. Preite contends, he did not receive a lump-sum distribution, he has provided no evidence that the Plan did not purchase an annuity for him.  Simply because YSL [Beaute] cannot find a record of such a purchase is not dispositive of whether or not such purchase was made." (Doc. 45 at 4.)  Further, YSL Beaute contends that Preite's claim is barred by the applicable statute of limitations[9] and by the doctrine of laches because Preite's "claim for disbursement of benefits from the terminated Plan was denied in 1988, when he did not receive either a check or an annuity contract," and his "failure to take any meaningful action to secure his benefits, and his reliance on verbal assurances from anonymous personnel in the Squibb human resources department, was unreasonable." (Doc. 43 at 8.)  Finally, YSL Beaute contends that Preite should have

---

[9]     Both parties agree that the applicable limitations period in this case is five years, borrowing on the Florida contract limitations period, which is most analogous limitations statute of the state in which the claim is being made.  (Docs. 43 at 7; 44 at 8.)  See Hoover v. Bank of America Corp., 286 F. Supp.2d 1326, 1333 (M.D. Fla. 2003), aff'd, 127 Fed. Appx. 470, 2005 WL 80957 (11th Cir. 2005).

pursued his administrative remedies in 1988 and 1989 "when his lump-sum distribution was not paid, nor when his request for some documentation of his future benefits was denied," and that his failure to do so bars his claim now.  (Doc. 43 at 10; see also Doc. 45 at 6.)

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The existence of some factual disputes between the parties will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there is no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the causes of action at issue will identify which facts are material.  Id.

Normally,  "'[i]n an ERISA benefit denial case . . . in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.'"  Curran v. Kemper National Services, Inc., No. 04-14097, 2005 WL 894840, *7 (11th Cir. 2005) (unpublished *per curiam* opinion)(quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)); accord Clark v. Hartford Life and Accident Ins. Co., No. 8:05-CV-67-

T-23MAP, 2006 WL 890660, *2 (M.D. Fla. April 6, 2006) (unpublished opinion), aff'd, No. 06-12552, 2006 WL 2623327 (11th Cir. Sept. 14, 2006).  This is not the typical ERISA case, however, and there is no administrative record.

*De novo* review is the default standard for ERISA claims brought pursuant to 29 U.S.C. § 1132(a)(1)(B), "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Inasmuch as there is no evidence that the Plan, at any time, gave the plan administrator discretion to act, the Court will apply the *de novo* standard of review to the pending cross motions for summary judgment.

### B.   Proper Defendant

Most contentious is the issue of whether YSL Beaute may be held liable for an obligation of a Plan that has been terminated and no longer exists.  YSL Beaute, in essence, contends that Preite may only recover benefits under Section 1132(a)(1)(B) exclusively from the Plan itself, and that since the Plan is terminated, Preite has no source of recovery.  While not so explicitly stated, this argument addresses whether YSL Beaute is the proper defendant to Preite's claim for benefits from the Plan.

Based upon YSL Beaute's counsel's concessions at oral argument, there is no dispute that 1) Yves Saint Laurent Parfums Corporation, successor to original Plan administrator Charles of the Ritz Group, Ltd., was the Plan sponsor and administrator

at the time of termination of the Plan on August 9, 1988,  (see also Docs.11-2 at 8;

18-2 at 2, ¶¶ 2,3; 45 at 2); and 2) YSL Beaute, Inc. is the corporate successor to Yves

Saint Laurent Parfums Corporation.

Nevertheless, YSL Beaute argues that it is not liable because

> [a]fter the assets of the Plan had been distributed in 1988, the Plan ceased to exist - there was no Plan and no Plan sponsor or administrator. Therefore, any entity acquiring an interest in the former Plan sponsor, Yves Saint Laurent Parfums Corp., after 1988 could not be a successor Plan sponsor, because Yves Saint Laurent Parfums Corp. , when it was acquired, was not the Plan sponsor."

(Doc. 45 at 2.)

> YSL [Beaute] never exercised any authority over the Charles of the Ritz Group Plan, and never made any determination as to payment of Plan benefits. YSL [Beaute] has never had custody or control over Plan funds, which were disbursed in 1988.

(Doc. 45 at 4.)

"[T]he relief provided in an action to recover benefits under ERISA is equitable,

not legal[;] . . . the relief consists of an order directing a person or entity having the

necessary authority under the benefit plan to pay the participant the benefit that he

seeks."  Hunt, 119 F.3d at 906-07.   Equitable relief includes recovery of policy

benefits which a participant was wrongly denied.  Anderson v. Unum Life Ins. Co. of

America, 414 F.Supp.2d 1079, 1108 (M.D. Ala. 2006)(citing Hunt, 119 F.3d at 907).

Unless an entity has the authority under the plan to effect payment, it cannot provide

the relief sought under Section 1132(a)(1)(B).  Hunt, 119 F.2d at 908.  "[A]n order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested."  Id. at 908.

Section 1132(a)(1)(B) confers the right to sue the plan administrator for recovery of benefits.  See Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir. 2001).  "The proper party defendant in an action for ERISA benefits is the party that controls the administration of the plan," which may include the employer or the plan sponsor.  Hoover v. Bank of America Corp., 286 F. Supp.2d 1326, 1337 (M.D. Fla. 2003), aff'd, 127 Fed. Appx. 470, 2005 WL 80957 (11th Cir. 2005)(citing Garren v. John Hancock Mutual Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997(holding that employer was proper defendant in ERISA claim when it acted as plan administrator).[10]

In Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339 (5th Cir. 2003), the Fifth Circuit held that an employer, as plan *sponsor*, could be named as defendant and liable for benefits in a Section 1132(a)(1)(B) action for benefits.  332 F.2d at 349-50.  Noting that while the language of 29 U.S.C. § 1132(d)(2)[11] suggests

---

[10]     The term "fiduciary" as used in the context of ERISA, is defined "'in functional terms of control and authority over the plan.'" Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 892 n.2 (11th Cir. 1997).

[11]     29 U.S.C. § 1132(d)(2) provides:

> Any money judgment under this subchapter against an
> employee benefit plan shall be enforceable only against
> the plan as an entity and shall not be enforceable against

that the plan is the only proper party defendant, 332 F.3d at 349, courts have expanded the provisions of section 1132 to permit recovery against employers, when it was the employer's decision to deny benefits, and when the employer is the plan administrator or sponsor. <u>Musmeci</u>, 332 F.3d at 349-50. The court reasoned that the plan sponsor could be named as a defendant because under ERISA, the term "administrator" means the "'plan sponsor'" "'if an administrator is not so designated,'" and "'plan sponsor'" means "'the employer in the case of an employee benefit plan established or maintained by a single employer.'" <u>Musmeci</u>, 332 F.3d at 349 n.6 (quoting 29 U.S.C. §§ 1002(16)(A) and (B)(i)). Where there was no instrument designating a plan administrator, then the "plan sponsor" becomes the "plan administrator" under Section 1002(16)(A). <u>Musmeci</u>, 332 F.3d at 349 n.6. Furthermore, in <u>Musmeci</u>, the employer named indisputably denied the benefits sought.

In the ERISA context, a successor corporation to an administrator of a plan "steps into the shoes" of its predecessor, acquiring all of the powers conferred by the plan, including the discretionary authority to make benefits decisions. <u>See</u> <u>Giannone v. Metropolitan Life Ins. Co.</u>, 311 F. Supp.2d 168, 175 (D. Mass. 2004). Thus, a participants' claims for retirement medical benefits under ERISA, against a

---

any other person unless liability against such person is established in his individual capacity under this subchapter.

subsequent employer, would be treated as a claim against the plan administrator or trustee and not dismissed for failure to name proper party, in light of employees' allegations that the subsequent business assumed obligations to contribute to retirement plan it took over from the predecessor, and is liable as successor. Bish v. Aquarion Services Co., 289 F. Supp.2d 134, 146 (D. Conn. 2003). A subsequent business may be liable in an ERISA civil enforcement action under Section 1132(a)(1)(B) just as ERISA recognizes successor liability in related contexts. Bish, 289 F. Supp.2d at 146. Cf. Risteen v. Youth For Understanding, Inc., 245 F. Supp. 2d 1 (D.D.C. 2002)(successor employer obligated to extend health insurance benefits to employee under ERISA).

The Third Circuit in Teamsters Pension Trust Fund v. Littlejohn, 155 F.3d 206 (3d Cir. 1998), in holding that a surviving post-merger union was liable for unpaid pension contributions, determined that successor liability under ERISA was governed by federal common law, "developed with ERISA's policy goals in mind . . . to protect plan participants and their beneficiaries." 155 F.3d at 208 (citing 29 U.S.C. § 1001(b)). Transferring the debts and obligations of the predecessor to the surviving entity "will further ERISA's policy goal of protecting employee pension plan participants and their beneficiaries." Littlejohn, 155 F.3d at 210.

That the Plan is "terminated" does not terminate Plan obligations. For example, "'even after plan participants and beneficiaries have received their actuarially vested

benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits.'" <u>Waller v. Blue Cross of California</u>, 32 F.3d 1337, 1339 (9th Cir. 1994)(citation omitted)(participants of terminated plan had standing to seek equitable remedy of constructive trust against terminated plan, as opposed to a legal remedy).[12]

This is a case in equity. The ERISA statutory framework was created by Congress "to protect interstate commerce and the interests of the participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. § 1001(b).

Given this statutory imperative and the cited case law, the obligation of the Plan sponsor to provide benefits which are due and owing survives the termination of the Plan. Put another way, if the Plan sponsor fails to properly distribute or account for all benefits owed before terminating the Plan, the Plan sponsor or administrator may be liable for the payment of those benefits. For this reason, contrary to YSL Beaute's

---

[12] The Court was unable to locate any additional case law for the proposition that the termination of a Plan does not extinguish the right of a participant to bring a claim for benefits. The parties, even upon the Court's express invitation, did not provide the Court with any further assistance.

assertion (Doc. 45 at 2), Yves Saint Laurant Parfums Corp., the Plan administrator and sponsor at the time the Plan was terminated, remains liable for unpaid benefits. Because YSL Beaute is indisputably the successor in interest to Yves Saint Laurent Parfums Corp., it now is liable to provide those benefits, upon proof that they are owing.

### C. **YSL Beaute, Inc.'s Remaining Procedural Defenses**

#### 1. **Standing**

YSL Beaute argues that Preite lacks standing to bring this claim for benefits "because he is not currently a participant or beneficiary of an employee welfare plan." (Doc. 36 at 3.)   YSL Beaute does acknowledge, however, that Preite "was a participant in the employee pension plan while he was employed by Charles of the Ritz," (Doc. 43 at 2, ¶ 2), but based upon the "inference" that all funds were distributed from the Plan in 1988, including Preite's lump sum check, Preite is no longer a participant with standing.  (Docs. 43 at 4; 45 at 5.)

ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan - plan beneficiaries and plan participants. 29 U.S.C. § 1132(a).  See Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1351 (11th Cir. 1998).  A "participant" includes any employee or former employee "who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7).  See Firestone Tire and Rubber Co., 489 U.S. at 118 ("'all

employees in covered employment and former employees with a colorable claim to vested benefits "may become eligible . . .").

There is no dispute that Preite was a "participant" under the Plan. Further, it is undisputed in the record evidence that Preite never received his pension benefits. Thus, he has a claim to vested benefits, and has standing to bring this ERISA claim.

### 2. **Statute of Limitations**[13]

Employee benefits claims accrue when participants become aware of the facts necessary to make their claims, such as when their application for benefits is denied. Burks v. American Cast Iron Pipe Co., 212 F.2d 1333, 1336 (11th Cir. 2000). "A cause of action accrues when the events upon which it is based occur, but in the context of an ERISA claim, a cause of action does not become an enforceable demand until a claim is denied." Hoover, 286 F. Supp.2d at 1333 (citing Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357, 361 (5th Cir. 1981)).[14]

YSL Beaute contends that Preite was "on notice in 1988 that he had not and

_____

[13]    The doctrine of laches does not apply to ERISA actions. Herman v. South Carolina National Bank, 140 F.3d 1413, 1427 (11th Cir. 1998)(district court erred extending laches exception to ERISA action); Hoover, 286 F. Supp.2d at 1333 n.9 (no legal authority to support defendant's claim of laches). YSL Beaute, Inc. has abandoned its defense of laches.

[14]    In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

would not receive a lump-sum distribution he requested," (Doc. 45 at 8), triggering the statute of limitations.

There is no evidence Preite filed a formal application for benefits in 1988 through 1990, as defendant suggests, see Hoover, 286 F. Supp.2d at 1334, and no evidence that the Plan clearly denied or repudiated any request.  The letter from Gucci America, Inc. to Preite, dated October 28, 2004, was the first clear indication of an intent by any entity with responsibility to deny benefits vis a vis the Plan.  (Doc. 11-2 at 8.)[15]  Therefore, this suit, filed January 31, 2005, was well within the applicable limitations period.

### 3.    Exhaustion of Administrative Remedies

ERISA requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).  "[P]laintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."  Counts v. American General Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997).  However, the exhaustion requirement may be excused "when resort to administrative remedies would be futile or the remedy inadequate," Counts, 111 F.3d at 108, or where a claimant is denied "meaningful

---

[15]    YSL Beaute formally denied Preite's claim on February 16, 2006, when it answered Preite's Second Amended Complaint.  (Doc. 36.)

24

access" to the administrative review scheme in place.  <u>Perrino v. Southern Bell Telephone & Telegraph Co.</u>, 209 F.3d 1309, 1315-16 (11th Cir. 2000).

YSL Beaute argues that because Preite did not pursue any administrative remedy when he did not receive the lump-sum distribution he requested in 1988, he has failed to exhaust his administrative remedies.  (Docs. 43 at 10; 45 at 6.)

This defense fails because there is no evidence that 1) Preite's claim for benefits was denied in 1988; 2) the Plan followed the proper procedures in denying Preite's claim in 1988; and 3) the Plan ever complied with the notification requirements by providing Preite with a description of the Plan's review procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination.  <u>See</u> <u>Hall v. Tyco Int'l Ltd.</u>, 223 F.R.D. 219, 238 (M.D. N.C. 2004); 29 C.F.R. § 2560.503-1(g)(1).[16]

YSL Beaute's remaining defenses, estoppel and venue (Doc. 36 at 4), appear to have been abandoned, and are without merit.

_____

[16]    Nor does it appear the Plan administrator in 1988 complied with the notice of plan termination requirements. 29 U.S.C. § 1341(b)(2)(B).  "This notice must specify the amount of such person's benefit commitments as well as the data used to determine the benefit, such as length of service, age, wages, assumptions used (including mortality and interest rate assumptions), and any other information required by the PBGC [Pension Benefit Guaranty Corp.]."  <u>Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Comm.</u>, 40 F.3d 1202, 1209 (11th Cir. 1994). This notification was required by statute in 1988.  <u>See</u> <u>Payonk v. HMW Industries, Inc.</u>, 883 F.2d 221, 229-230 (3d Cir. 1989).

**D.**   **The Merits**

The following evidence is undisputed in the record: (1) Preite was entitled to receive a monthly retirement benefit of $505.70 from the Charles of the Ritz Group, Ltd. Pension Plan (also referred to as the Squibb Corporation Pension Plan) commencing the month after his 65th birthday on May 30, 2004 (Docs. 11-2 at 6; 11-4 at 20, 21); (2) the Plan was terminated on August 9, 1988 (Docs. 11-2 at 8, 11; 11-4 at 22, 23); and 3) Preite has never been paid any pension benefits by the Charles of the Ritz Group, Ltd. Pension Plan, either as a lump sum payment, or as a monthly benefit, nor has he ever received an annuity contract.  (Docs. 11-2 at 3, ¶ 10; 11-3 at 23.)

Also undisputed is that Yves Saint Laurent Parfums Corporation was the administrator and sponsor of the Charles of the Ritz Group, Ltd. Pension Plan when the Plan was terminated in 1988, and that YSL Beaute, Inc. is the corporate successor of the Yves Saint Laurent Parfums Corporation.

Acknowledging that it has no records and can find none,[17] YSL Beaute is left only to "infer" that the terminated Plan's assets were properly distributed in lump sum payments or used to purchase annuity contracts for all eligible participants and beneficiaries in 1988, including Preite, (see Doc. 45 at 4-6), and to speculate that "[i]f

---

[17]   The Court inquired at oral argument whether the government maintains pension records which might be relevant, but was told such records regarding this Plan are no longer available.

a lump sum check had been issued, as [Preite] had requested, it could have been misdirected in the mail and never cashed, or the check could have been lost or stolen." (Doc. 45 at 5-6.)  Preite's uncontroverted and corroborated testimony that he has never received any retirement benefit from the Charles of the Ritz Group, Ltd. Pension Plan, coupled with the concessions of YSL Beaute, leave no issue of fact that YSL Beaute as successor to the Plan administrator and sponsor Yves Saint Laurent Parfums Corp., has the responsibility and authority to effect payment and is capable of providing the relief requested, which Preite is entitled to receive.

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1.      Plaintiff's Second Amended Motion For Summary Judgment Against Defendant, YSL Beaute, Inc. (Doc. 39) is **GRANTED**.

2.      Defendant YSL Beaute, Inc.'s Motion For Summary Final Judgment (Doc. 43) is **DENIED.**

3.      All remaining pending motions (Docs. 10, 12, 20, 32) are **DENIED AS MOOT.**

4.      Plaintiff Robert N. Preite shall file with the Court any motion seeking attorneys' fees and costs, if so entitled, no later than **October 15, 2006.**

5.      The Court will enter Judgment in favor of plaintiff Robert N. Preite, and against defendant YSL Beaute, Inc., enjoining YSL Beaute, Inc. to pay retirement

27

benefits to Robert N. Preite which he is entitled to receive under the Charles of the Ritz Group, Ltd. Pension Plan, in the amount of $505.70 a month, commencing as of June 1, 2004 and going forward, along with prejudgment  interest.  Judgment will be withheld until the Court determines any remaining issues of fees and costs.  Counsel for plaintiff should confer with counsel for defendant and submit a proposed judgment no later than **October 15, 2006**.

　　　　**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of September, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:
Counsel of Record